IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 21, 2001

## CHARLES EDWARD MITCHELL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 71076     Ray L. Jenkins, Judge**

_____

**No. E2001-00373-CCA-R3-PC**
**August 23, 2001**
_____

The petitioner appeals the denial of post-conviction relief on his second degree murder conviction, arguing that the post-conviction court erred in finding that he had effective assistance of trial counsel. Following his entry of a plea of guilty to second degree murder, the petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel. Specifically, he alleged that trial counsel was ineffective for failing to thoroughly investigate and prepare his case, and that were it not for the deficiencies in counsel's representation, he would not have entered his plea of guilty. At the conclusion of an evidentiary hearing, the post-conviction court dismissed the petition, finding that the petitioner had failed to offer any proof to support his allegations. After a careful review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Albert J. Newman, Jr. (on appeal) and Susan E. Shipley (at trial), Knoxville, Tennessee, for the appellant, Charles Edward Mitchell.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The petitioner, Charles Edward Mitchell, was indicted on charges of first degree premeditated murder and first degree felony murder for stabbing a man to death during the course of a robbery. On March 13, 2000, he pled guilty to the lesser offense of second degree murder in exchange for an agreed sentence of twenty years. No direct appeal of his conviction was filed.

On August 25, 2000, the petitioner filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of counsel and that his plea of guilty was not voluntary. Post-conviction counsel was appointed, and on October 5, 2000, an amended petition was filed. The petitioner alleged that trial counsel had been ineffective, *inter alia*, for failing to adequately communicate with the petitioner or investigate his theory of self-defense, failing to interview witnesses, and failing to file or properly argue pretrial suppression motions contesting the voluntariness of the petitioner's confession. The petitioner further alleged that were it not for these failures of trial counsel, he would not have pled guilty, but instead would have insisted on going to trial.

An evidentiary hearing was held on February 8, 2001. The petitioner testified that trial counsel talked with him "about eight times," for a total of only "four or five hours" conversation, from the time that she was appointed to represent him until the date that he pled guilty, a period of about two years. He said that he told her that he had stabbed the victim in self-defense, and that he wanted to go to trial. He had ultimately decided to plead guilty to second degree murder because trial counsel told him that he would receive a life sentence if he went to trial. However, he still believed that he had a valid defense to the stabbing, and that he was not guilty of second degree murder. He had talked to trial counsel about one week before entering his plea. At that time, he told her that he wanted to go to trial, but she "kept insisting" that he take the plea. He said that he had wanted to withdraw his guilty plea almost immediately, but had said nothing to the judge or trial counsel because he had thought that it was too late after he signed the agreement.

The petitioner described his relationship with trial counsel as "hostile" and said that he lost respect for her during the course of their dealings, because he "just didn't trust her." He did not believe that trial counsel had been prepared to go to trial. He complained that trial counsel had not talked to any witnesses, but said that he had not given her the names of any to talk to because there were none. He said that he had twice asked that she be removed from his case. If he had thought that she was prepared to go to trial, he said, he would not have entered his guilty plea.

The petitioner acknowledged that he had testified under oath at the guilty plea hearing that he was entering his guilty plea voluntarily and knowingly. He conceded that trial counsel had shown him photographic and videotape evidence that she had obtained from the police. He also admitted that she had told him that she had uncovered a potential witness whose testimony would support the killing as a felony murder.

Trial counsel testified that she was a defense attorney and had been practicing in Tennessee for ten years. Referring to notes she had kept of the case, and listing the specific dates and time durations, trial counsel testified that she had met with the petitioner "face-to-face" sixteen times, for a total of "well over 30 hours." She said that she had talked to every witness listed on the State's indictment, with the sole exception of the victim's widow, but that she had read the widow's statement. She had kept the petitioner informed regarding her conversations with witnesses, including "both the good news and the bad." Trial counsel said that during the course of her investigation she had uncovered a witness to the murder, a woman who claimed to have heard the victim begging the petitioner not to take his money. She had also talked to the petitioner's mother,

who had witnessed part of the murder, and who had apparently taken some steps to cover up evidence. Trial counsel had understood that the petitioner's mother was "instrumental in talking with [the petitioner] and getting him to take his plea."

Trial counsel testified that she had discussed with the petitioner his theory of self-defense, and the possibility of his testifying at trial. However, he had a prior conviction for a sexual offense, which trial counsel felt would be "devastating" at trial. In addition, he had given a very damaging, "very detailed confession" to the police in which he had "admitted to stabbing this man six times and then going to bed or going to eat or something." Based on all the circumstances, including the fact that the photograph of the victim's body showed that his pocket had been turned inside out after he was stabbed, trial counsel had recommended that the petitioner enter the plea of guilty to second degree murder. She said that the final decision, however, had been the petitioner's.

On cross-examination, trial counsel testified that the petitioner's version of the incident was that the victim had come to his house to buy drugs, they had gotten into a fight over some marijuana, and that he had, at some point, stabbed the victim. The petitioner had indicated in conversations with her and with the police that the victim "may or may not have had a knife." Trial counsel had looked at the physical evidence in the case, and discovered that the victim had, in fact, had a two and one-half to three-inch pocketknife. She acknowledged that she had told the petitioner that it would be difficult for the State to prove premeditation. She thought that it would have been "quite easy," however, for the State to have proven felony murder, based on the evidence available. She admitted that the victim had still had his identification on him and that the police had not taken any money into evidence, but pointed out that the victim's pocket had been "pulled out" when his body was discovered "lying sprawled out in the street." She was "absolutely certain" that the petitioner had understood what he was doing in entering his guilty plea.

At the conclusion of the hearing, the post-conviction court dismissed the petition, finding that the petitioner had failed to prove his allegations of ineffective counsel by clear and convincing evidence. The court found that trial counsel "went far beyond what is usually required of competent defense counsel," and that there was no proof "whatsoever" to support the petitioner's allegations of deficient performance on the part of his trial counsel. Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

The sole issue that the petitioner raises on appeal is whether the post-conviction court erred in finding that he had effective assistance of trial counsel. The petitioner contends that he pled guilty only because trial counsel was unprepared to go to trial, and the only legal advice she provided was that he accept the State's plea offer. The State argues that the record supports the post-conviction court's findings in this case.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held

in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, reviewed *de novo*, with a presumption of correctness given to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). To succeed on a claim of ineffective assistance of counsel, the petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. When a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that were it not for deficiencies in his counsel's performance, he would not have pled guilty but instead would have insisted on going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998) (quoting Hill v. Lockhart, 464 U.S. 52, 59, 106 S. Ct. 366, 370-71, 88 L. Ed. 2d 203 (1985)).

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When analyzing a petitioner's allegations of ineffective assistance of counsel, this court must indulge a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel

unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Because both prongs of the Strickland test must be satisfied before a petitioner can succeed on a claim of ineffective assistance of counsel, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). Courts, therefore, need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Since the petitioner pled guilty to the charge against him, there were additional required showings, which he failed to make, to establish that he was entitled to relief. "In cases involving a guilty plea or plea of nolo contendere, the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App.), perm. to appeal denied (Tenn.1998) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985), and Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)). Hill explains the showing of prejudice which must be made by a petitioner who entered a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370.

In dismissing the petition, the post-conviction court found that trial counsel had performed at a level beyond that necessary to establish competent representation, and that the petitioner had failed to offer any proof in support of his allegations. The record supports these findings. Trial counsel had detailed records of over thirty hours of meetings that she held with the petitioner. She testified that she had interviewed every witness but one that was on the State's list, and that she had even gone so far as to uncover a witness who had not been discovered by the police. That witness, however, would have offered testimony very damaging to the petitioner. Trial counsel said that she had thought it to be in the petitioner's best interest to plead guilty to second degree murder and had recommended that he do so. The final decision had been his, and she had no doubt that he

understood what he was doing. The petitioner acknowledged, and the transcript of the guilty plea hearing reveals, that he was questioned at length by the trial court regarding the voluntariness of his guilty plea. He testified under oath that he was entering the plea freely and voluntarily, that he was guilty, and that he understood that by entering his plea he was giving up his rights to a jury trial and all that it entailed. In sum, the evidence at the evidentiary hearing supports the findings and conclusion reached by the post-conviction court, that the petitioner failed to meet his burden of showing that he was denied effective assistance of counsel.

## CONCLUSION

After a careful review, we conclude that the record supports the post-conviction court's findings in this case. Accordingly, we affirm the judgment of the post-conviction court dismissing the petitioner's petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE